A94A0947. CARING HANDS, INC. v. DEPARTMENT OF
HUMAN RESOURCES.
A94A1431. CARING HANDS, INC. et al. v. DEPARTMENT OF
HUMAN RESOURCES.
(449 SE2d 354)

POPE, Chief Judge.
Defendant, Caring Hands, Inc., appeals the trial court's order granting plaintiff, Department of Human Resources ("DHR"), a per-

manent injunction that prohibits defendant from continuing to oper ate a personal care home or other health care facility above its li censed capacity of six residents, and which compels defendant to tak immediate steps to relocate those residents presently living at th home over and above this licensed capacity. Additionally, defendan and its owners and officers, Wayne Putnam and June Putnam (th "Putnams"), appeal the trial court's order holding them in wilful con tempt for failing to obey the permanent injunction.

In 1990, defendant was given approval by DHR to operate a Adult Day Rehabilitation Center ("ADR") in Ranger, Gordo County, Georgia. The ADR was to provide day services only and no 24-hour-a-day personal care. Since 1992, defendant also has operate a separate personal care home on the same property as the ADR. Thi personal care home is licensed to provide sleeping, eating and livin quarters for a maximum of six people. In September 1992, defendan built two dormitories adjacent to the ADR building and the person care home. According to defendant these two dormitories were bui to provide living quarters for its ADR clients. Defendant began usin these dorms to house approximately thirty-five people prior to appl ing for a permit that would allow it to expand its personal care hom from a six resident facility to a forty-two resident facility. DHR fir learned of defendant's use of the dormitories after an inspection the personal care home was conducted by the Gordon County Healt Department on September 15, 1992. The health inspector determine that the home was operating above its licensed capacity and furth observed that many of the facility's residents appeared to need se vices beyond those which a personal care home is authorized to pr vide. It was not until after this inspection that defendant applied f an expansion permit.

After receiving defendant's application to expand its person care home, DHR did nursing assessments on the home's residents an conducted inspections of the dormitories. During a nursing asses ment, which occurred on October 29, 1992, DHR determined that least 19 of the 41 total residents assessed were not appropriate placed in the personal care home because they either needed servic beyond those authorized to be delivered in a personal care home se ting, or because they were unable to recognize or react to an eme gency situation. During an inspection of the premises on March 1 1993, DHR found numerous deficiencies. Specifically, DHR dete mined that several of the residents did not meet the definition "ambulatory adult" and therefore should not have been housed in personal care home. DHR also determined that the dormitories ha an inadequate number of bathing facilities, improper door handl and a lack of adjoining living and sleeping areas. Additionally, DH noted that the dormitories did not meet fire safety requirements. A

these deficiencies were recorded in an inspection report which was given to defendant. The inspection report also directed defendant to remove all non-ambulatory residents from the premises within 30 days.

On April 20, 1993, another inspection took place, during which DHR found that defendant had made no improvements to the dormitories and that the characteristics of the residents had not changed. On May 28, 1993, based on the March and April assessments and inspections, DHR denied defendant's application to expand. Defendant initiated an administrative appeal, but subsequently withdrew this appeal.

On June 22, 1993, a follow-up inspection took place. Again, DHR found that no changes had been made to the condition of the dormitories. During another follow-up inspection on August 9, 1993, the only changes DHR found were that the door handles had been replaced and the dorms had obtained a certificate of occupancy from the fire marshal. However, on August 20, 1993, this certificate of occupancy was revoked upon re-inspection by the fire marshal. An additional nursing assessment during this period revealed that resident characteristics had remained basically the same except that residents appeared to be more in need of skilled nursing care. Restraints were found on at least three residents and DHR observed that approximately twenty-eight of the forty-one residents could not respond appropriately to an emergency situation.

DHR issued a letter on September 3, 1993, requiring defendant to submit a plan for the relocation of its residents that would reduce the resident population to its licensed capacity by October 11, 1993. This plan was to be submitted no later than September 10, 1993. Defendant was informed that if it failed to do this then DHR would seek appropriate injunctive action. DHR also informed defendant that if it needed assistance in relocating its residents, it should contact the Adult Protective Services of the Gordon County Department of Family & Children Services. Defendant failed to provide a relocation plan to DHR, but continued to house more than six residents at its facility. Consequently, DHR filed its verified complaint for injunction on September 23, 1993, alleging that defendant was operating a personal care home without the required permit or license contrary to OCGA § 31-7-3. Hearings were held on DHR's request for preliminary and permanent injunctive relief on October 7, 1993 and November 8, 1993. By order dated November 11, 1993, the trial court granted DHR's request for permanent injunction and enjoined defendant from operating a personal care home or other health care facility beyond its licensed capacity of six residents. Defendant was further ordered to ensure that the residents housed in its licensed six person personal care home were appropriate for personal care. Additionally, the court

ordered defendant to take immediate steps to have those resident housed in the dormitories relocated from its premises, said relocatio to be completed immediately as allowed by law. Defendant filed it first notice of appeal on November 16, 1993, objecting to the tria court's November 11, 1993 order granting DHR's request for an in junction. This appeal was docketed in this court as Case No A94A0947 on January 21, 1994.

On November 23, 1993, DHR learned from the Gordon Count Health Inspector that defendant had not complied with the terms c the injunction. Subsequently, DHR filed a verified motion for cor tempt against defendant on November 24, 1993. The motion wa heard on December 7, 1993. In an order dated December 9, 1993, th trial court held that the defendant and its owners and officers, th Putnams, were in wilful contempt because they had made no attemp to accomplish relocation of the personal care home's residents. De fendant was fined and the Putnams jailed. The contempt proceedir was continued by the court until December 16, 1993. At the Decen ber 16 hearing the court again found defendant and the Putnams i wilful contempt, noting that although some attempt to effect reloca tion had been made, in actuality there were two more residents at th home as of December 15, 1993, than there were on December 3, 199 The trial court ordered that defendant be fined and that the Putnan be jailed until such time as they reduced defendant's resident popul: tion to six or until defendant obtained an appropriate license. D fendant and the Putnams filed an application for supersedeas and notice of appeal regarding the trial court's finding of contempt. Th appeal was docketed in this court as Case No. A94A1431 on Marc 17, 1994. To date, the trial court's final contempt order, which dated December 27, 1993, has not yet been executed. The appeals both cases originally were transferred by this court on March 22, 199 to the Supreme Court of Georgia, this court being of the opinion th Case No. A94A0947, which is from the trial court's order granting permanent injunction, involves questions of equity, and therefor falls within the Supreme Court's jurisdiction under Art. VI, Sec. V Par. III of the Constitution of the State of Georgia. The Supren Court, however, transferred the cases back to this court on April 1994.

We note that when these appeals were before the Supreme Cou of Georgia, both parties requested that the appeals be expedite Upon transfer of the cases back to this court we attempted to comp with the request for expedited review and scheduled oral argume for June 1, 1994. On May 20, 1994, however, Caring Hands' attorne Ralph McCallum, Jr., died. In light of Mr. McCallum's death th court, upon Caring Hands' pro se motion, rescheduled oral argume out of term, for September 6, 1994. Said argument was heard on th

late.

## Case No. A94A0947

1. The first appeal turns on the issue of whether the trial court abused its discretion in granting DHR's request for permanent injunction. In cases such as this, the standard of review is whether or not the trial court manifestly abused its discretion. *Slaven v. Buford*, 57 Ga. 100 (355 SE2d 663) (1987).

In its first two enumerations, defendant argues that the trial court, in issuing its November 11, 1993 order requiring defendant to immediately remove residents from its unlicensed facility, erred by not taking into consideration evidence as to the feasibility or consequences of such an order, and that relocation of the residents under the circumstances was impossible. In its third enumeration, defendant claims that the mandatory injunction is not specific enough in its terms and fails to describe in reasonable detail the act or acts mandated by the court.

Although we do not specifically address defendant's first two enumerations of error here, we do find that the record in this case demonstrates that the trial court put a great deal of consideration into its decision to grant the permanent injunction against defendant. Moreover, we recognize the trial court's concern with the fact that defendant has, for well over a year, continued to operate its personal care home knowing that it lacked the appropriate license and further knowing that many of its residents were inappropriate for personal care home living. Additionally, we can sympathize with the trial court's frustration with defendant's continued lack of effort to either obtain the appropriate license or otherwise ensure that its residents were relocated to appropriate facilities based on their individual needs. Indeed the record supports the statements in the trial court's November 11, 1993 order that defendant's actions, or lack thereof, come dangerously close to bad faith in this case. In sum, we wish to stress that we are not in any sense condoning the defendant's actions in this case. Nevertheless, we are compelled by our paramount concern for the residents, most of whom are elderly and suffer from varying ailments, to hold that the issuance of the trial court's November 11, 1993 order, which mandates that defendant take immediate steps to relocate those residents housed in the dormitories and further requires that such relocation be completed immediately as allowed by law, constitutes error and a manifest abuse of discretion by that court because the order provides no detailed guidance to defendant, its residents or their families as to how they are to effectuate the relocation. The order also fails to set out any reasonable timetable within which relocation should be completed.

OCGA § 9-11-65 (d) provides that, "[e]very order granting an injunction and every restraining order shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive notice of the order by personal service or otherwise." Id. It is only logical to require that orders which compel a party to take some action be at least as specific, if not more so, as orders which seek to restrain some action. Consequently, we hold that the specificity requirement of OCGA § 9-11-65 (d) applies equally to mandated acts, such as those found here, and acts of restraint.

In this case, the trial court's November 11, 1993 permanent injunction order states as follows: "Defendant should be and is hereby ENJOINED from operation of a personal care home or other health care facility beyond the six residents for which it is presently licensed. Defendant is further ordered to ensure that residents housed in the six person personal care home are appropriate for personal care. Defendant is ORDERED to take immediate steps to have those residents housed in the dormitories relocated from its premises. Such relocation shall be completed immediately, as allowed by law." Under the circumstances set forth in this case, we find that the above order does not meet the requirements set forth in OCGA § 9-11-65 (d). The order fails to set forth, in reasonable detail, a plan under which defendant's residents can be orderly, efficiently and safely relocated to other facilities suitable to their individual needs. The order also fails to set forth a reasonable time limit in which relocation should be completed. Although relocation within ten days is probably possible, our concern is that any attempt at relocation within such a short period of time would place an undue burden on the residents and their families and might otherwise be detrimental to the residents' health and well-being.

We therefore remand this case back to the trial court with the instruction that the court order both parties in this case to submit plans for the orderly, efficient and safe relocation of the residents from defendant's unlicensed facility. The plans shall set forth in reasonable detail a timetable within which each party reasonably believes that relocation can be accomplished. In developing this timetable, the parties should take into consideration any foreseen difficulties in said relocation, including, but not limited to, the availability of alternative facilities and the locations of such facilities. Moreover, assessments of each resident's condition and individual needs shall be made by the parties, either in conjunction with each other or separately, to determine what type of facility is appropriate for each resi-

lent. This information shall be supplied to the trial court along with a list of each resident's name and a corresponding prognosis of their condition. The plans also shall contain a list of each resident's legal guardian or next of kin. Additionally, the parties should submit any other relevant information they believe to be necessary to the orderly, efficient and safe relocation of the residents.

The plans shall be submitted to the trial court within a reasonable time limit set by that court. Upon review of the two plans, the trial court should issue another injunctive order, which shall be specific as to the court's findings warranting the grant of injunctive relief, and shall be detailed as to the acts that each party shall perform in effectuating relocation. The trial court should also set up a specific timetable, within which performance of the acts mandated by the court shall be completed. The residents' next of kin or legal guardians should be notified of the trial court's order so that they may assist in the timely relocation of the residents. Failure to comply with the trial court's new order will subject defendant and the Putnams to the court's contempt powers, including the imposition of fines.

## Case No. A94A1431

. In the second appeal defendant and the Putnams argue that the trial court's order of December 27, 1993, finding them in contempt of court for failing to comply with the court's November 11, 1993 permanent injunction order, constitutes error. Although it is clear from the record that the Putnams and defendant essentially made no attempt to accomplish relocation of the residents located at the unlicensed portion of defendant's facility or otherwise comply with the trial court's order, our holding in Division 1 of this opinion dictates that we reverse the trial court's finding of contempt.

*Case No. A94A0947 remanded with instruction. Judgment in Case No. A94A1431 reversed. McMurray, P. J., and Smith, J., concur.*

DECIDED OCTOBER 18, 1994.

June Putnam, *pro se.*
*Edwin Marger,* for appellants.
*Michael J. Bowers, Attorney General, William C. Joy, Mary F. Russell, Senior Assistant Attorneys General, Margot M. Cairnes, Assistant Attorney General, Velma C. Tilley,* for appellee.